**GULF OIL CORPORATION**

v.

**James R. SCHLESINGER et al.**

**Civ. A. No. 77–3113.**

United States District Court,
E. D. Pennsylvania.

Jan. 17, 1979.

Donald B. Craven, Craig D. Miller, Martha C. Brand of Miller & Chevalier, Washington, D. C., John E. Bailey, Catherine C. McCulley, Houston, Tex., Hoyt H. Harmon, Jr., Bala Cynwyd, Pa., for Gulf Oil.

Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., Mark Kreitman, David A. Engels and Thomas Patton, Dept. of Energy, Washington, D. C., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In this action for declaratory and injunctive relief brought by Gulf Oil Corporation ("Gulf") against the Federal Energy Administration ("FEA") and two FEA officials,[1] Gulf is challenging the validity of FEA Ruling 1977–5, as well as that of a Decision and Order and Revised Remedial Order of the FEA, all issued pursuant to the FEA's authority to regulate the price of petroleum.

Ruling 1977–5 [2] is an interpretation of the term "transaction" as that term is used in the petroleum price regulations. Those regulations define "transaction" as a "binding contract",[3] a definition originally adopted in 1973 by the Cost of Living Council ("CLC") and carried forward without change by the FEA. The Ruling purports to interpret the "transaction" definition in a manner consistent with the original CLC definition. Gulf, however, arguing that the CLC intended the phrase "binding contract" to apply to variable-price contracts, con-

tends that the Ruling in reality *amended* the original "transaction" definition by excluding variable-price contracts from the meaning of "binding contract". This amended definition, Gulf says, was detrimentally and retroactively applied to it by the FEA in the challenged Orders.

Unfortunately, when the CLC issued its regulation defining "transaction" as a "binding contract", it published no contemporaneous statement explaining whether or not the definition was meant to include variable-price contracts. In seeking to fill this administrative vacuum, Gulf noticed the depositions of Ottie Vipperman, a former official of the CLC, the Federal Energy Office ("FEO"),[4] and the FEA, and of William Walker, former General Counsel of the CLC and the FEO and former Acting Deputy Director of the CLC.

The defendants moved for a protective order, claiming that Gulf was not permitted to probe the thought processes of agency decision-makers, and that judicial review in this case is limited to the administrative record developed in connection with the challenged FEA Orders. On November 9, 1978, we denied the defendants' motion for a protective order, and on November 14, 1978, Gulf attempted to depose Mr. Vipperman. Gulf's efforts were largely frustrated by counsel for defendants, who objected to, and instructed Mr. Vipperman not to answer, questions relating to the "transaction" definition and whether or not the CLC had intended the definition to include variable-price contracts. A similar fate befell Gulf when it deposed Mr. Walker on November 16, 1978.

Gulf has now moved for orders compelling discovery and specifically ordering Mr. Vipperman and Mr. Walker to respond to those questions to which defendants objected at the depositions. We have heard oral argument on these motions, and for the following reasons, we will grant them.

---

1. The FEA has been succeeded in function, and thus in this litigation, by the Department of Energy.

2. 42 Fed.Reg. 15302 (March 21, 1977).

3. 10 CFR § 212.31.

4. The FEO was a predecessor agency of the FEA.

### I. Relevance of the CLC regulation outweighs the privilege for the agency decisional process.

■ When we denied the defendants' motion for a protective order we did not write an accompanying memorandum, assuming it obvious that our denial of the motion indicated our recognition of the fact that no absolute privilege attaches to the administrative decision-making process, and that the matters concerning which Gulf sought to depose Mr. Vipperman and Mr. Walker were relevant to this litigation. Apparently we assumed too much, since defendants continued to maintain at the depositions that the information sought by Gulf was irrelevant and privileged.

Therefore, we now state expressly that because Gulf is challenging Ruling 1977–5 as being arbitrary and capricious and an irrational amendment of the CLC's "transaction" definition, the intent and meaning of the original CLC regulation are relevant to this litigation. Since no contemporaneous administrative explanation of the original regulation exists,[5] the only means by which Gulf can demonstrate the original interpretation of the phrase "binding contract" and, indeed, the only means by which we may review the challenged Ruling 1977–5 and its relationship to the original CLC regulation, is through the testimony of the agency officials responsible for formulating and interpreting the regulations at issue.

Thus, the situation confronting Gulf and us is similar to that presented in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In order to overcome this problem of the lack of a contemporaneous administrative explanation of a relevant agency action, the Court in *Overton Park* expressly authorized the taking of testimony of agency decision-makers. Faced with the defendants' mo-tion for a protective order, and following *Overton Park*, we concluded that the privilege traditionally given to agency decision-makers was outweighed in this case by the need for the information sought, and we therefore denied the motion for a protective order.

### II. The information Gulf sought from Mr. Vipperman and Mr. Walker is not privileged.

The questions asked of Mr. Vipperman and Mr. Walker and objected to by defendants were within the perimeter of proposed subjects for inquiry set forth in Gulf's memorandum in opposition to the defendants' motion for a protective order. The information sought was thus relevant to this litigation, and, absent some privilege attached to the information, should be provided. So far as defendants' objections were based upon a claim of privilege for the decisional process of agency officials, they cannot be sustained. *Overton Park, supra.*

■ Nor, with respect to Mr. Walker, can they be sustained under the attorney-client privilege, a barrier to inquiry which defendants raised at his deposition. Defendants seem not to understand that *they* bear the burden of proving the applicability of the privilege to the information sought by Gulf. *International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177 (M.D.Fla. 1973). Defendants' statement that "Gulf has failed to even attempt to demonstrate why the privilege should not apply notwithstanding the fact that it was clearly raised"[6] demonstrates a misconception of the relevant burden of proof; it is the defendants who must show, for each question objected to, that the question elicits communications made to the attorney

"(a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law

---

5. Although the CLC issued a Preamble to its Phase IV regulations containing the "transaction" definition, the Preamble did not contain an interpretation of that definition nor of the phrase "binding contract". Since these interpretations and the purpose of the original regu-lation are now relevant, we must allow Gulf the discovery it is seeking.

6. Defendants' opposition to plaintiff's motion to compel discovery relating to the deposition of William N. Walker, at 3.

or (ii) legal services or (iii) assistance in some legal proceeding . . ."

*United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358 (D.Mass. 1950).

■ The defendants have failed to meet this burden. Instead, they have made a blanket assertion of the attorney-client privilege, suggesting that because Mr. Walker's position bore the title of General Counsel, all information gained by him during his tenure at the agency became cloaked with the privilege. The attorney-client privilege, however, is not so broad, and cannot be sustained merely upon a sweeping assertion of its applicability without even an attempt to meet the traditional test set forth above.

In denying the applicability of the attorney-client privilege to the information sought from Mr. Walker, we note also that Mr. Walker was *not only* General Counsel of the CLC and then of the FEO, but was also the Acting Deputy Director of the CLC and as such was responsible for the promulgation of the CLC's Phase IV petroleum price regulations. As he himself testified at his deposition, his duties included the formulation of public regulations and the interpretation of these regulations; we find it difficult to understand how the interpretation of public regulations can be considered confidential and covered by the attorney-client privilege, and believe that defendants have failed to demonstrate that they are. Curiously, evidence that Mr. Walker acted not only as legal counsel to the CLC, but also as an energy *policy-maker,* dealing with public information, was provided by defendants themselves in an affidavit by Mr. Walker submitted by the defendants in other litigation.[7] From that affidavit, in which Mr. Walker discussed his role as a legal advisor, it is clear that his position also required knowledge about, and

formulation of, energy policy and the public impact of CLC regulations. It is such matters of energy policy about which Gulf has sought to question Mr. Walker; since the defendants have failed to prove the applicability of the attorney-client privilege to these matters, we cannot sustain their objections on the basis of that privilege.

■ Finally, we hold that defendants' objections to the questions to Mr. Vipperman and Mr. Walker cannot be sustained under 10 CFR § 202.21 *et seq.,* regulations cited by the defendants to justify their instructing Mr. Vipperman and Mr. Walker not to respond to the contested questions at the depositions. Those administrative rules regulate the production or the disclosure of information contained within FEA files or acquired by an FEA employee or former employee. However, we fail to see the applicability of these regulations since, as counsel for defendants conceded at oral argument, § 202.21 *et seq.* are based upon 5 U.S.C. § 301, which on its face applies only to employees and not *former* employees of government agencies and departments. It thus appears that the FEA regulations are inapplicable to Mr. Vipperman and Mr. Walker.

■ But even if 5 U.S.C. § 301 did apply to *former* agency employees, the statute is merely procedural and creates no evidentiary privilege; in fact § 301 *explicitly states* that it "does not authorize withholding information from the public or limiting the availability of records to the public." Thus, when a court determines that no privilege attaches to the information which a litigant seeks from a government employee or former employee, as we have so determined, § 301 cannot be used as a basis for withholding that information. Defendants' objections to Gulf's questions must therefore be overruled.[8]

---

7. *Ralph Nader v. John C. Sawhill,* Civ. No. 74–1025 (D.D.C.) [Mr. Sawhill was the Administrator of the FEA, and was sued in his official capacity].

8. Indeed, we are at a loss to understand by what authority counsel for defendants have ordered Mr. Vipperman and Mr. Walker, whom they do not represent, not to answer questions at a deposition. We regret that we were not satisfactorily enlightened by defense counsel's explanation at oral argument.

**918**

III. *The defendants have raised their objections with "unclean hands".*

█ We note in conclusion an equitable reason requiring that defendants must fail in their contention that Gulf may not discover and prove the purpose and interpretation of administrative regulations through the testimony of agency decision-makers, particularly Mr. Vipperman and Mr. Walker. As previously stated, defendants have presented the affidavit of William Walker in at least one other case challenging the propriety of agency action; in that affidavit Mr. Walker explained what policy considerations underlay certain FEA actions. Gulf has also called to our attention six cases brought against the FEA and/or FEA administrators[9] in which the defendants submitted affidavits by *Mr. Vipperman* in support of challenged FEA regulations. In those affidavits, Mr. Vipperman testified to the history of CLC, FEO, and FEA regulations, the intent and purpose of those regulations, and what considerations prompted their issuance. It is precisely that sort of inquiry which Gulf has tried to make of Mr. Vipperman and Mr. Walker in this litigation, and to which defendants have now objected.

Defendants cannot have it both ways. They cannot offer Mr. Walker's and Mr. Vipperman's testimony relating to agency decision-making when it suits their purpose, and then come into this court and claim that information regarding the decision-making process is privileged. The excuse offered by counsel for defendants that it was not they, but other attorneys for the defendants, who offered these affidavits, and that the cases in which they were offered did not concern the identical regulations at issue here, presents no relevant distinction between those cases and this one and cannot justify the inequitable situation which would result were we to sustain the defendants' objections to the discovery sought by Gulf. Simply stated, the defendants are attempting to prevent other litigants from doing precisely what defendants themselves have done in the past, and this we will not allow.

For all of the above reasons we will grant Gulf's motions to compel discovery and overrule the defendants' objections to the questions identified by Gulf in those motions.

**9.** *Consumers Power Company v. FEA,* Civ. Action No. 572000 (E.D.Mich.); *Dorchester Gas Processing Company v. FEA,* Civ. Action No. CA 2–75–134 (N.D.Tex.); *Mobil Oil Corporation v. FEA,* Civ. Action No. CA 3–75–0527–D (N.D.Tex.); *State of Arkansas v. John W. Sawhill,* Civ. Action No. 74–1186 (D.D.C.); *Exxon Corporation v. FEA,* Civ. Action No. 74–921 (D.D.C.); *Marathon Oil Company v. FEA,* Civ. Action No. C 74–316 (N.D.Ohio).