MONTGOMERY WARD & CO., INC., Appellant,

The United States, Appellant-Intervenor,

v.

ZENITH RADIO CORPORATION, Appellee.

No. 81–24.

United States Court of Customs and Patent Appeals.

March 11, 1982.

---

1. 28 U.S.C. § 1651(a).

2. 37 CFR 1.201(b).

Charles W. Douglas, Patrick J. Head and Juan Rocha, Jr., Chicago, Ill., for appellant.

Frederick L. Ikenson, Washington, D. C., and Philip J. Curtis, Glenview, Ill., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

Montgomery Ward & Company (Wards) and the Government as intervenor appeal from an order of the Court of International Trade requiring the Government to disclose to Zenith Radio Corporation (Zenith) a file compiled by the Customs Service during an investigation of Wards for possible violations of 19 U.S.C. § 1592. We reverse and remand with instructions to dismiss this action for want of jurisdiction.

### Background

This proceeding involves review of the discretionary action of the Secretary of Commerce and raises fundamental questions of the separation of powers between the Judicial and Executive Branches of Government. Zenith seeks to overturn a portion of settlement agreements under which the Secretary of Commerce, the Secretary of the Treasury, and the Attorney General compromised claims against 22 importers with respect to dumping duties im-

posed on these companies pursuant to T.D. 71–76, 5 Cust.Bull. 151 (1971), and civil penalty claims against four of these companies, including Wards, asserted under 19 U.S.C. § 1592. Zenith challenges only the legality of the agreements insofar as they relate to dumping duty claims which were not in litigation and which would be settled for approximately $66 million.[1] Zenith alleged two causes of action, the first that the Secretary of Commerce had no authority to settle claims for dumping duties under 19 U.S.C. § 1617, and a second that, assuming the Secretary had such authority, the settlements were entered into in bad faith. On February 27, 1981, the court below granted the Government's motion for summary judgment on the first cause of action and denied summary judgment on the cause based on "bad faith."

Zenith alleges that the subject settlements are the culmination of years of utter disregard of the law by officials of the Executive Branch who have interfered with and frustrated enforcement of the Antidumping Act, that political considerations motivated the settlement rather than enforcement, that Zenith had no opportunity to be heard concerning the amount of duties which would be assessed, that the settlements violated its procedural rights under § 751 of the Tariff Act of 1930 (19 U.S.C. § 1675), which was added by the Trade Agreements Act of 1979, and that it is aggrieved by its competitors' unlawful release from payment of hundreds of millions of dollars in dumping duties.

Zenith asserts that the Government's estimate of $138.7 million as the possible amount of dumping duties which might be collected was low, and that any belief by the officials in the legal weakness of the Government's case against the importers with respect to the Government's method of calculating such duties was unfounded.

Zenith further asserts that the Government of the United States and the Government of Japan entered into a secret side agreement at the time of the Orderly Marketing Agreement entered into between the countries in May 1977 in which the United States agreed to assess dumping duties in conformity with the International Antidumping Code, notwithstanding that the Code differs from our national legislation.

Finally, Zenith asserts that the settlement agreement falsely states that the United States knew of no violation of law relating to or arising from the importation of Japanese television receivers.

Zenith's original complaint, filed June 27, 1980, was based upon rights under section 516A(a)(2) of the Tariff Act of 1930 (19 U.S.C. § 1516a(a)(2)), and asserted jurisdiction in the court under 28 U.S.C. § 1581(c). In its amended complaint filed November 3, 1980, it added an allegation that the action was brought pursuant to 5 U.S.C. § 772 et seq. [sic, the Administrative Procedure Act, 5 U.S.C. § 702 et seq., hereinafter APA], jurisdiction being conferred by 28 U.S.C. § 1581(i).[2] However, the remaining allegations of the complaint were unchanged except for minor details and the addition of a specific pleading that it would be adversely affected or aggrieved by the favorable settlement of the claims against its competitors.

### Discovery Proceedings in the Court of International Trade

On July 2, 1980, Zenith served interrogatories and a request for production of docu-

---

1. The Secretary of Commerce acted on behalf of the Government with respect to these claims. The Department of Justice settled the claims upon which actions had been brought for collection of unpaid duty assessments. Zenith does not attack the settlement of these claims by Justice even though settled on the same basis as those not in litigation. The Secretary of the Treasury was responsible for and settled the claims for civil penalties under 19 U.S.C. § 1592 with respect to false documentation of entries. During the investigation into possible civil and criminal violations, the Government gave guarantees of confidentiality to Wards to avoid grand jury proceedings and Wards turned over a voluminous quantity of its business records under this agreement. It is this entire file (hereinafter "the Wards file") that is now being sought by Zenith.

2. 28 U.S.C. § 1581(i) was enacted as part of the Customs Courts Act of 1980, Pub.L.No.96–417, § 201, 94 Stat. 1729, which took effect October 1, 1980.

ments upon the Government. The Government moved for an order relieving it of the obligation to respond, urging that judicial review should be limited to the record made by the agency. The court denied that motion on August 20, 1980.

Zenith moved on October 25, 1980, for an order preliminarily enjoining implementation of the settlement agreements. The Government opposed, again moving for an order relieving it of the obligation to respond to discovery.

On December 9, 1980, the court issued an injunction pendente lite, preliminarily enjoining implementation of the settlement agreements, stating that Zenith had "made out a substantial case on the merits of its alternative second [bad faith] cause of action." *Zenith Radio Corp. v. United States,* 1 CIT Slip Op. 80–10, 505 F.Supp. 216, 219 (1980).

On December 12, 1980, the court denied the Government's second motion, holding that Zenith had "made a sufficiently strong showing of bad faith so as to warrant discovery"[3] and directed the Government to respond to Zenith's discovery demands. *Zenith Radio Corp. v. United States,* 1 CIT, Slip Op. 80–11, 15 Cust.Bull. & Dec., No. 1, 29 (1980). The administrative record was timely filed on January 27, 1981, and, accordingly, had not been reviewed at the time of the court's order of December 12, 1980.[4]

The Government continued to resist production of documents outside the administrative record in connection with its motion for summary judgment and submitted affidavits to overcome Zenith's showing of "bad faith." Zenith moved for an order compelling production. Among the documents sought was the Investigative file compiled by the Customs Service during its § 1592 investigation of Wards (Wards file). Wards was permitted to intervene for the sole purpose of opposing the motion for production of that file.

On May 13, 1981, the court granted Zenith's motion for production, under a protective order. Its motion for reconsideration being denied on June 18, 1981, Wards appealed. On July 7, 1981, this court granted a stay of the May 13, 1981 order.

### Positions of the Parties on Appeal

Zenith argues that the subject discovery order is interlocutory and, therefore, not subject to review at this time. Zenith further contends that the court below did not abuse its discretion in going beyond the record and granting discovery because of the strength of its showing of bad faith. Zenith maintains that the allegations set out above are strong indicators of bad faith by the Government which justify setting aside the settlement.

It appears that Zenith's theory of "bad faith" stems from a meeting in Honolulu in 1972 between President Nixon and Prime Minister Tanaka of Japan at which trade matters were discussed.[5] Zenith concludes that a secret agreement must have been

---

**3.** No findings were made to support the order. The court referred to the showing made by Zenith to obtain a preliminary injunction. The December 9, 1980 order of the court granting that injunction (Slip Op. 80–10, 505 F.Supp. 216) states without particularizing what facts it relied upon:

Based on these facts which are largely uncontroverted, the court is of the view that plaintiff has made out a substantial case on the merits on its alternative second cause of action . . . .

**4.** Section 706 (APA) which is specifically applicable under 28 U.S.C. § 2640(d), provides:

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Under *Camp v. Pitts,* 411 U.S. 138, 141–43, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973), it is clear that the starting point for any review must be the administrative record. It is only with the administrative record before the court, supplemented if necessary by affidavits from the appropriate officials, that a decision can be made on the strength of a "bad faith" showing and the necessity for further discovery. *See also Quincy Oil, Inc. v. FEA,* 468 F.Supp. 383 (D.Mass.1979).

**5.** Brief in Support of Plaintiff's Cross-Motion for Partial Summary Judgment on its First Cause of Action and in Opposition to Defendant's Motion to Dismiss, filed October 10, 1980, at 15.

entered into at that meeting whereby the United States agreed to non-enforcement of U.S. antidumping laws with respect to television sets from Japan in exchange for Japan's increased purchases of U.S. agricultural products. Zenith's conclusion is based on a rumor that the U.S. agreed to "take a dive" on color TV's; Japanese press stories expressing concern over U.S. antidumping laws; newspaper reports that Japan agreed to purchase more U.S. farm products; newspaper reports that trade issues were a high priority at the 1972 meeting; and Department of Agriculture statements encouraging exports to Japan.

Wards' position on appeal is that the court has jurisdiction to review the discovery order; that Zenith's "showing of bad faith" is manifestly insufficient to justify any discovery; that the Wards file is irrelevant to the dumping duty settlement; that the court abused its discretion in not recognizing Wards' private interest and the strong public interest in the continued confidentiality of documents compiled in the Wards file; that Zenith has no standing to challenge the settlement of claims under 19 U.S.C. § 1592; and that if any discovery should be permitted, the scope of discovery being pursued is greater than can be justified by need or relevance.[6]

The Government was permitted to intervene in this appeal in support of appellant Wards. In addition to endorsing Wards' views, the Government asserts that, this appeal being properly before this court, we possess jurisdiction to review the merits of the trial court's decision to allow Zenith to conduct discovery; that the discovery permitted expands the parameters of judicial review of agency action as defined in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); that the court's ordering discovery without review of the administrative record and without an explanation of its reasons for accepting Zenith's "flimsy" allegations was manifest error; that a non-party to a settlement agreement has no standing to challenge its merits and, in particular, Zenith has no special interest in the settlement of the § 1592 claims; and, finally, that the order violates the Executive privilege.

## OPINION

### I

In this appeal, Wards properly focuses on the validity of the discovery order with respect to the Wards file, Wards not being a party to the proceeding below. However, we agree with the Government that if an appeal by Wards lies in this court with respect to the discovery order, this court may properly, indeed must, review the authority underlying the discovery order, where fundamental jurisdictional questions have been raised with respect to Zenith's standing and the permissible scope of judicial review.[7]

Accordingly, we first determine whether this appeal is properly before this court.

---

**6.** Because we dispose of this case on other grounds, we need not reach Wards' and the Government's arguments concerning the confidentiality of the Wards file or any applicable privilege. *See,* e.g., *Black v. Sheraton Corp. of America*, 564 F.2d 550 (CA D.C.1977).

**7.** In any case properly before it for appellate review, an appellate court is obliged to notice want of jurisdiction in the court below sua sponte if not raised by a party, *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Cameron v. Hodges*, 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888); *Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884), and may, in any event, assume jurisdiction for the limited

purpose of determining jurisdiction. *United States v. United Mine Workers*, 330 U.S. 258, 289–95, 67 S.Ct. 677, 693–96, 91 L.Ed. 884 (1947). Also, while parties are not necessarily entitled to a hearing on this issue, *see,* e.g., *Kamsler v. Zaslawsky*, 355 F.2d 526 (CA 7 1966), we view the arguments concerning scope of review sufficient to call into question the jurisdiction of the court below. Indeed, where "[t]he questions [Zenith] presents are outside the narrow scope of review permitted ... we must dismiss for want of jurisdiction." *Carter v. Cleland*, 643 F.2d 1, 2 (CA D.C.1980). *See also Garcia v. Neagle*, 660 F.2d 983 (CA 4 1981).

## II

### *Appealability of Discovery Order*

Citing a long line of cases including *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 341–42 (CA 10 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977), and *N.C. Asso. of Black Lawyers v. N.C. Board of Law Examiners*, 538 F.2d 547, 548–49 (CA 4 1976), Zenith argues that the subject discovery order is interlocutory and thus not appealable as a matter of right. Acknowledging that an interlocutory order may be considered final in some circumstances, Zenith says Wards' arguments for finality are neither collateral to the underlying litigation [8] nor based on a recognized privilege against disclosure.

Interlocutory discovery orders are normally not appealable. Courts have recognized, however, an exception where, as here, the information sought is in custody of a third party and the putative appellant can neither resist nor force the custodian to resist compliance with the discovery order. *See, e.g., Perlman v. United States*, 247 U.S. 7, 12–13, 38 S.Ct. 417, 419–20, 62 L.Ed. 950 (1918); *In re Berkley & Co.*, 629 F.2d 548, 551 (CA 8 1980); *In re Matter of Grand Jury Applicants, C. Schmidt & Sons*, 619 F.2d 1022, 1024–25 (CA 3 1980); *United States v. RMI Corp.*, 599 F.2d 1183, 1186–87 (CA 3 1979). In such circumstances, denial of an appeal precludes all opportunity for review, unlike the normal discovery situation in which compliance can be refused and the order challenged on appeal from a resulting contempt finding.

Contrary to Zenith's argument, the courts have not limited interlocutory appeals of discovery orders to those involving assertions of absolute or constitutional privileges. Indeed, appeals have been permitted when based on an interest in continued confidentiality of business records. *See, e.g., United States v. RMI Corp.*, supra.

That Wards does not assert an absolute privilege is thus irrelevant to the issue of whether the subject order is appealable. Wards has no power to compel Government acceptance of a contempt citation in protection of its confidential business information. That inability, coupled with Wards' interest in continued confidentiality of its information, is sufficient to confer a right of appeal. Though Zenith distinguishes *RMI*, supra, saying that the discovery order there permitted disclosure to competitors and was not limited, as here, to opposing counsel, we are not persuaded that that distinction alone renders the present order non-final. A contrary view, by totally defeating Wards' opportunity for review, would conflict directly with the Court's rationale in *Perlman*, supra.

Having concluded that the appeal now before us is proper, we turn to the reasons for our holding that the court below lacks jurisdiction in this case.

## III

### *Statutory Authority for Settlement*

Consideration must first be given to the pertinent statute governing the Secretary's action. The authority for settlement of antidumping proceedings is provided by section 617 of the Tariff Act of 1930, as amended (19 U.S.C. § 1617), which states:

Upon a report by a customs officer, United States Attorney, or any special attorney, having charge of any claim arising under the customs laws, showing the facts upon which such claim is based, the probabilities of recovery and the terms upon which the same may be compromised, the Secretary of the Treasury is authorized to compromise such claims, if such action shall be recommended by the General Counsel for the Department of the Treasury.

The responsibility for administration of the antidumping laws was transferred from

---

8. The "Collateral Order" doctrine, established in *Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), permits an interlocutory order to be deemed a final order for the purpose of appellate review where, inter alia, the order is based on a claim separable from, and collateral to, the rights asserted in the underlying cause of action. *Id.* at 546–47, 69 S.Ct. at 1225–26.

the Secretary of the Treasury to the Secretary of Commerce by Reorg. Plan No. 3 of 1979, § 5(a)(1)(C), 44 Fed.Reg. 69273 (1979), including, specifically, the authority to compromise claims under § 1617 (§ 5(a)(1)(G)).[9]

## IV

### *Jurisdiction of Court Below to Review Settlement*

#### a.

 We find no basis for review under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a arising by Zenith's attack on the settlement agreement under 19 U.S.C. § 1675.[10] 19 U.S.C. § 1516a provides for judicial review of certain "determinations," including those made under § 1675. Such "determinations" must be made in accordance with delineated procedures and must be based on specific factual findings and legal conclusions. Thus, the merits of a determination, as well as its procedural correctness, are subject to judicial review. A settlement agreement is not an administrative review of an antidumping order resulting in a "determination" under 19 U.S.C. § 1675. Unlike a "determination," the Government may not impose a settlement agreement as of right. Moreover, the basis for a decision to settle cannot be supported by factual findings or legal conclusions which indicate that the decision to accept a particular amount or particular terms in satisfaction

of a disputed claim is or is not correct.[11] Finally, Zenith does not assert and we do not see any basis for asserting that settlement comes within any of the other statutory categories of reviewable "determinations" set forth in § 1516a. Therefore, while the statute provides under § 1516a a right of review to certain persons "aggrieved or adversely affected" by "determinations" as specified therein, we hold that the Court of International Trade has no jurisdiction under 28 U.S.C. § 1581(c) to review a settlement agreement.

#### b.

Zenith's alternative basis for review by the Court of International Trade, 28 U.S.C. § 1581(i), provides in pertinent part:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

\* \* \* \* \* \*

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

---

9. The Secretary of Commerce received the aforesaid powers of the Secretary of the Treasury and of the General Counsel. By notice dated April 28, 1980, which partially delegated this authority, the Secretary of Commerce stated:

I shall as Secretary of Commerce retain and exercise all authority under law to decide any compromises of claims existing under T.D. 71–76.

2. I hereby delegate to the General Counsel of the Department of Commerce the authority to recommend any compromises of claims arising under the customs law, as provided in 19 U.S.C. § 1617 and transferred to the Secretary under the aforesaid Reorganization Plan and Executive Order. This authority shall apply in the matter of claims under T.D. 71–76, and any subsequent matters arising under 19 U.S.C. § 1617.

45 Fed.Reg. 29623 (1980).

10. Under 19 U.S.C. § 1675, existing antidumping orders are reviewable by the administering authority. Whenever a review is conducted, any interested party is entitled to a hearing and may contest the underlying factual findings or legal conclusions by suit against the Government in the Court of International Trade. Zenith does not assert that it was denied any rights in connection with the issuance of T.D. 71–76 or subsequent administrative review procedures. Moreover, T.D. 71–76 is neither negated nor revoked in whole or in part by the settlement. It continues in effect and is currently operative.

11. The correctness of a settlement agreement is, of course, properly subject to review by the appropriate oversight committees of the Congress; and if a violation of criminal law is suspected, the matter is properly within the jurisdiction of the United States Department of Justice.

This section must be read in conjunction with 28 U.S.C. § 2631(i):

Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5.

and 28 U.S.C. § 2640(d):

In any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5.

The purpose of 28 U.S.C. § 1581(i) is shown in the legislative history as follows:

This section [1581(i)] granted the court jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws. The purpose of this section was to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the federal district courts and the Court of International Trade. This language made it clear that all suits of this type are properly commenced only in the Court of International Trade and not in a district court. Thus, the Committee did not intend to create any new causes of action, but merely to designate definitively the appropriate forum.

\* \* \* \* \* \*

However, subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.[12]

Thus, we have no doubt that Congress intended that the Court of International Trade, and not a district court, have jurisdiction of civil actions for review of administration and enforcement of the antidump-

ing statute to the extent appropriate under the APA.

Where jurisdiction is asserted under § 1581(i), the court must not accept the allegations at face value but must determine the thrust of the complaint. *Royal Business Machines, Inc. v. United States*, 669 F.2d 692 (CCPA 1982). Jurisdiction under § 1581(i) cannot be made a resting ground for judicial review of activities neither contemplated nor permitted by Congress.

With respect to discretionary acts of the Executive, *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), and other authority discussed herein indicate that the extent of permissible judicial review, that is, a court's jurisdiction, varies with the statutory grant to the Executive.[13] In summary, if action is committed by law to the discretion of the Executive, no review is permitted. If action is committed by law to discretion but procedural requirements are imposed, the satisfaction of procedural requirements, but only these, may be judicially reviewed. If an action is discretionary but there is law from which a court may determine that the exercise of discretion is arbitrary, capricious, or not in accordance with law, the decision itself may be reviewed on that limited basis. For reasons to be discussed, we conclude that the scope of judicial review with respect to the subject settlement agreement is limited to determining whether procedural requirements have been satisfied.

*Scope of Review*

■ Review of agency action is authorized under 5 U.S.C. § 702 as follows:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

No specific statutory right is provided for judicial review of the merits of a settlement

---

**12.** H.R.Rep.No.96–1235, 96th Cong., 2d Sess. 33, 48, *reprinted in* [1980] U.S.Code Cong. & Ad.News 3729, 3745, 3760.

**13.** *See* n. 7, supra.

pursuant to 19 U.S.C. § 1617. However, the Supreme Court in *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968), indicated that no explicit provisions for review may be necessary in some instances. "[W]hen the particular statutory provision invoked [that is, alleged to be violated] does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision." *Id.* at 6, 88 S.Ct. at 654.

Zenith asserts that the legislative purpose of the Antidumping Act is to protect domestic industry, in this case the particular interests of Zenith. The thrust of its complaint, that is, the alleged "legal wrong", is that the settlement is part of an alleged course of conduct by the Government of nonenforcement of the law for many years. It characterizes the settlement as the "culmination" of nonenforcement in that its competitors have been released from payment of hundreds of millions of dollars in duties.

The premise of Zenith is untenable. Settlement is a tool of enforcement of the law, here specifically granted to the Secretary of Commerce in conjunction with the transfer to him of responsibility for enforcement of the Antidumping Act. Accepting Zenith's position would deprive the Secretary of any power to settle these claims without Zenith's consent as well as the consent of others in the industry. 19 U.S.C. § 1617 contains no such limitation.

In enforcing the law the Secretary is not providing a private remedy but acting in the public interest. *See Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 265, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940). It is for the Secretary, not the Court of International Trade, to determine that the overall purposes of the Act are best served by the terms of a settlement. Thus, the frustration of Zenith's desire that its competitors pay a greater sum in dumping duties than the settlement provides is

not a "legal wrong" resulting from "agency action" of which courts can take cognizance. *See FTC v. Standard Oil of California*, 449 U.S. 232, 247–49, 101 S.Ct. 488, 497–98, 66 L.Ed.2d 46 (1980), (Stevens, J., concurring).

In no previous case has a court assumed jurisdiction at the behest of a third party to review the merits of a settlement agreement entered into by the Government with its competitor. The only precedent we find for setting aside a settlement is where the court has found that the complainant was deprived of its statutory right to a hearing on the merits of the underlying case prior to settlement. *See International Bro. of Teamsters v. NLRB*, 339 F.2d 795 (CA 2 1964), and cases cited therein. This is in accord with the directive of the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), that discretionary action cannot be reviewed if "there is no law to apply." *Id.* at 410, 91 S.Ct. at 820. *See also Santa Clara v. Andrus*, 572 F.2d 660, 668 (CA 9), *cert. denied*, 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 157 (1978); *Ness Invest. Corp. v. USDA*, 512 F.2d 706, 715–16 (CA 9 1975). No situation is more within the category of "no law to apply" than the multifaceted judgmental decision to settle a claim. Thus, the substance of the settlement is clearly outside the scope of judicial review. The only law to apply here is set forth as procedural requirements in 19 U.S.C. § 1617, and any legal wrong to Zenith must be based on the Secretary's violation of the procedures set forth therein.

Zenith does not dispute that the procedures set out in 19 U.S.C. § 1617 were followed [14] but asks the court to find that the procedures of 19 U.S.C. § 1675 are superimposed, thus giving it a right to a hearing which it says would encompass the terms of settlement. We see no reasonable basis for placing such a limitation on the Secretary's authority under the statute and conclude there is none. This conclusion is in accord with the recent decision of the

---

14. 19 U.S.C. § 1617, quoted supra, requires only a report of an appropriate Customs official and a recommendation of the General Counsel.

Supreme Court in *Watt v. Energy Action Education Foundation*, —— U.S. ——, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981), where the Court refused to restrain the Secretary of the Interior's discretion in connection with experimentation in awarding offshore oil rights by resort to another statute which laid out criteria for the program generally.

Similarly here, the challenge to the Secretary's action must be directed to 19 U.S.C. § 1617 exclusively. Under 19 U.S.C. § 1617, Zenith was not entitled to a hearing or to be consulted regarding the considerations entering into the terms accepted by the Secretary in settlement of these claims. Its right of participation ended with the issuance of T.D. 71–76 (except as provided under 19 U.S.C. § 1675 discussed supra). Thus, Zenith has no grounds for asserting that its procedural rights to a fair hearing were denied, unlike the plaintiffs in the authority cited in the opinion of the court below. *See, e.g., Singer Sewing Machine Co. v. NLRB*, 329 F.2d 200 (CA 4 1964); *Ruppert v. Washington*, 366 F.Supp. 686 (D.D.C.1973), *aff'd*, 543 F.2d 417 (CA D.C. 1976); *Jarrott v. Scrivener*, 225 F.Supp. 827 (D.D.C.1964).

Zenith would also have us look behind the apparent regularity of the procedures into the motives for settlement. In *United States v. Morgan*, supra, 313 U.S. at 421–22, 61 S.Ct. at 1004–05 (*Morgan IV*) the Supreme Court stated:

And so we conclude that the order of the Secretary furnishes "the appropriate basis for action in the district court in making distribution of the fund in its custody." *United States v. Morgan*, 307 U.S. 183, 198 [59 S.Ct. 795, 803, 83 L.Ed. 1211]. But, finally, a matter not touching the validity of the order requires consideration. Over the Government's objection the district court authorized the market agencies to take the deposition of the Secretary. The Secretary thereupon appeared in person at the trial. He was questioned at length regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates. His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary "has a quality resembling that of a judicial proceeding." *Morgan v. United States*, 298 U.S. 468, 480 [56 S.Ct. 906, 911, 80 L.Ed. 1288]. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that "it was not the function of the court to probe the mental processes of the Secretary." 304 U.S. 1, 18 [58 S.Ct. 773, 776, 82 L.Ed. 1129]. Just as a judge cannot be subjected to such a scrutiny, *compare Fayerweather v. Ritch*, 195 U.S. 276, 306–07, [25 S.Ct. 58, 67–68, 49 L.Ed. 193] so the integrity of the administrative process must be equally respected. *See Chicago, B. & Q. Ry. Co. v. Babcock*, 204 U.S. 585, 593 [27 S.Ct. 326, 327, 51 L.Ed. 636]. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other. *United States v. Morgan*, 307 U.S. 183, 191 [59 S.Ct. 795, 799, 83 L.Ed. 1211].

In an earlier stage of the litigation, *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), in order to resolve whether there had been *procedural irregularities*, that is, whether there had been a hearing as required by law, examination of the Secretary and receipt of other evidence had been permitted. But in *Morgan IV* the Court clearly rejected the argument that probing into reasoning or motivation was appropriate as part of a procedural inquiry.

These same principles must be applied in this case. At most, Zenith may press inquiry into whether the statutory procedural requirements for settlement were satisfied. *See Watt v. Energy Action Education Foundation,* supra; *Sneaker Circus, Inc. v. Carter,* 566 F.2d 396 (CA 2 1977). It may not, however, be allowed to inquire into the merits of the settlement or into the Secretary's mental processes in deciding upon settlement in the guise of a challenge to procedure. Zenith's requests for discovery bear out that this is its objective.[15] The request for the Wards file bears on what figures the Secretary may have considered in arriving at settlement. Proving that the estimate in the report to him was lower than what Zenith considers reasonable does not destroy the lawfulness of his decision. Currency fluctuations can play a role in evaluation. Moreover, the dollar amount agreed upon may have been the best figure which could be negotiated regardless of the size of the claim. In any event, it may well be that other considerations were of greater significance than the precise dollar amount of the Government claims. The settlement agreement required more from the importers than the payment of money. Not only were any possible challenges to the assessment of duties expressly waived, but also concessions were obtained requiring cooperation in submitting data and information with respect to future enforcement. A tremendous backlog of cases was inherited by the Secretary which may well have interfered with current work of his Department not only in this area but in all areas of his responsibility under the Act. We do not know what weight he gave to each of these considerations [16] and, in any event, these are not matters for which the court may demand answers. To require an explanation for this type of discretionary Executive action fundamentally changes the nature and scope of judicial review. Moreover, a court cannot infer fraud or bad faith because the Secretary did not achieve as advantageous a settlement as the court may believe could have been made. Nor is it appropriate to infer bad faith in the Secretary's decision from the alleged transgressions of predecessors. The decision to settle under attack here was required to be and was the personal decision of the Secretary. *See* note 9 supra. Zenith includes in its complaint no more than perfunctory allegations of impropriety in the actions by the Secretary and his advisors.[17]

The admonition of Judge Tamm in *Hercules, Inc. v. EPA,* 598 F.2d 91, 123 (1978), is appropriate here:

> The speculative possibility that the Administrator accepted the staff view, not

---

**15.** Zenith has previously requested: documents of and/or concerning Admiral Bobby Inman, Acting Director of the CIA; State Department documents; Special Trade Representative documents; and the Presidential papers of Presidents Nixon, Ford, and Carter.

**16.** As the Court of Claims has noted in *Pennsylvania v. United States,* 643 F.2d 758, 764, cert. denied, —— U.S. ——, 102 S.Ct. 117, 70 L.Ed.2d 101 (1981):

> The true liability that a lawsuit poses is rarely susceptible of precise quantification prior to final judgment. Both parties in litigation may encounter unforeseen difficulties of proof. The skill of opposing counsel and the resources each side can devote to the conflict may be additional unknowns. Moreover, no party can be precisely certain of the interpretation the trier of fact will give to either the facts or the law. All of these factors are difficult to quantify ....

**17.** It is also apparent from the record which has been subsequently developed that Zenith is unable or unwilling to add any substance to its charges against these officials. In answer to the Government interrogatory asking Zenith to state the basis for the allegation that:

> [N]either the Secretary of Commerce in deciding to settle the alleged claims nor those Government officials who had the statutory responsibility to recommend settlement exercised the independent judgment contemplated by Congress in enacting section 617.

Zenith's response was:

> Objection. This interrogatory calls for the premature disclosure of plaintiff's evidence. Considering the nature of plaintiff's allegations in this action, it would unduly prejudice plaintiff's discovery efforts and trial preparation to answer this interrogatory at such an early point in the pretrial proceedings.

When required to answer under court directive, Zenith merely referred to conclusory statements made in various of its own briefs or motions.

because he was persuaded by the evidence, but for some improper reason, fails to overcome the strong presumption of regularity. To accept petitioner's invention to pierce the presumption on this basis would be to alter radically the nature of judicial review.

The Zenith complaint is manifestly not directed to correction of procedural irregularity. It does not seek to have the settlement set aside until the requirements of 19 U.S.C. § 1617 are properly met. Rather it seeks through the power of the court to prevent settlement.

We hold that such an action is not within the jurisdiction of the court under 28 U.S.C. § 1581(i).

### Conclusion

The order appealed from is *reversed* and this case is *remanded* to the Court of International Trade with directions to dismiss this action for lack of jurisdiction.

REVERSED AND REMANDED.