E. John PFOTZER et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 4690.

United States District Court,
D. Delaware.

May 27, 1975.

E. John Pfotzer, Elizabeth W. Pfotzer and Edmond Pfotzer, pro se.

W. Laird Stabler, Jr., U. S. Atty., John H. McDonald, Asst. U. S. Atty., Wilmington, Del., Scott P. Crampton, Asst. Atty. Gen., Jerome Fink and Robert T. Carney, Department of Justice, Washington, D. C., for defendant.

## OPINION AND JUDGMENT

LATCHUM, Chief Judge.

This case is before the Court on cross-motions for summary judgment. Rule 56, F.R.Civ.P. All parties admit there are no genuine issues of any material fact and the question for determination is simply a matter of law.[1] The plaintiffs E. John Pfotzer and Elizabeth W. Pfotzer[2] seek to recover an alleged federal income tax overpayment of $3,187.47 on their joint tax return for the calendar year 1963 and the plaintiff Edmond Pfotzer ("Edmond") seeks to recover a similar overpayment on his individual tax return for the calendar year 1963 in the amount of $8,338.71. All the plaintiffs are residents of Delaware. Jurisdiction exists under 28 U.S.C. §

1346(a)(1) and venue exists in this court under 28 U.S.C. § 1402.

In considering the government's motion for summary judgment, the pertinent facts viewed most favorably to the plaintiffs, Hood v. McConemy, 53 F.R.D. 435, 440 (D.Del.1971) are as follows: On September 12, 1969 Edmond filed a claim with the Internal Revenue Service ("IRS") for a refund of $8,338.71 from a federal income tax of $17,361.00 which he allegedly paid with his 1963 individual return.[3] In that claim Edmond alleged a net operating loss of $6,444.42 for the year 1964, $8,382.32 for 1965, and $8,815.71 for 1966 arising through a partnership operation he had with John in which he and John were equal partners. Edmond used the total net operating loss of $23,642.45 for those three calendar years to reduce his alleged 1963 tax liability. He arrives at a $8,338.71 reduction of his 1963 tax by applying 1963 *tax rates* to the total net operating *loss* of $23,642.45 as follows:

"Schedule of Net Operating Losses arising through Partnership Return, E. & E. J. Pfotzer, P.O. Box 402, Barre, Vermont, Employer No. 03-0196916

Net Operating Losses:

| Year | | District Operator |
|------|------|------|
| 1966 | $( 6,444.42) | Burlington, Vt. |
| 1965 | ( 8,382.32) | Burlington, Vt. |
| 1964 | ( 8,815.71) | Burlington, Vt. |
| | $(23,642.45) | To be carried back to 1963 |

Income tax paid with 1963 income tax return $17,-361.00

Decrease in tax previously assessed:

| | |
|------|------|
| Application of 1963 tax rates to above net operating loss carryback $23,642.45 = | 8,338.71 |
| Liability after application of carryback | $ 9,022.29 |
| Amount to be refunded | $ 8,338.71" |

(Docket Item 14, Exhibit A).

Thus, the basis of Edmond's claim is that the income tax paid with his 1963

---

1. Docket Items 14 and 20.

2. Elizabeth W. Pfotzer is a plaintiff in this action solely by reason of her filing a joint return with E. John Pfotzer. Accordingly,

these two plaintiffs will collectively hereinafter be referred to as ("John").

3. Docket Item 1, par. 14 and Exhibit 2; Docket Item 10, par. 14.

tax return should be reduced by an amount which results from applying 1963 *tax rates* to his total net operating *losses* for the years 1964, 1965 and 1966.

On September 12, 1969 John filed a similar claim with the IRS for a refund of $3,187.47 from a federal income tax of $8,854.60 which he allegedly paid with his 1963 tax return.[4] His claim for a tax refund was based on the same grounds as Edmond's claim and was calculated in the same manner as Edmond's claim by applying his total net operating *losses* for the years 1964, 1965 and 1966 to 1963 *tax tables* as follows:

"Schedule of Net Operating Losses arising through partnership return, E. & E. J. Pfotzer, P.O. Box 402, Barre, Vermont, Employer No. 03–0196916

Net Operating Losses:

| Year | | District Director |
|---|---|---|
| 1966 | $( 1,644.43) | Burlington, Vt. |
| 1965 | ( 4,382.32) | Burlington, Vt. |
| 1964 | ( 8,815.72) | Burlington, Vt. |
| Total | $(14,842.47) | to be carried back to 1963 |

Income tax paid with 1963 income tax return $ 8,854.60.

Decrease in tax previously assessed:

Application of 1963 tax rates to above net operating loss carryback, $14,842.47 = 3,187.47

Liability after application of carryback $ 5,667.13

Amount to be refunded $ 3,187.47"

(Docket Item 14, Exhibit B).

The plaintiffs filed waivers of statutory notice of claim disallowance on July 23, 1971, and the plaintiffs began this suit on July 16, 1973.[5]

The plaintiffs' claims for tax refunds are based on the assertion that their 1963 tax liability should be reduced due to net operating loss carrybacks[6] from 1964, 1965 and 1966. Jurisdiction of this court derives only from 28 U.S.C. § 1346 read in combination with 26 U.S.C. § 7422(a), which in pertinent part reads:

."(a) No suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund . . . has been *duly filed* with the Secretary or his delegate, *according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.*" (Emphasis added).

It is elementary that an untimely claim is not "duly filed." Rock v. United States, 279 F.Supp. 96, 98 (S.D.N.Y. 1968). For a refund claim relating to a tax overpayment attributable to a net operating loss carryback to be timely, the claim must be filed within the period:

"which ends with the expiration of the 15th day of the 40th month . . . following the end of the taxable year of the net operating loss . . . which results in such carryback." 26 U.S.C. § 6511(d)(2)(A).

Accordingly, a claim for refund based on a carryback of a net operating loss for the calendar year 1964 had to be filed by April 15, 1968 to be timely and

---

4. Docket Item 1, par. 6 and Exhibit 1; Docket Item 10, par. 6.

5. Docket Item 20, p. 10.

6. "Net operating loss deduction
(a) Deduction allowed.—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term 'net operating loss deduction' means the deduction allowed by this subsection.

(b) Net Operating loss carrybacks and carryovers.—
(1) Years to which loss may be carried.—
(A)(i) Except as provided in clause (ii) and in subparagraph (D), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss." 26 U.S.C. § 172 (1964).
Clause (ii) and subparagraph (D) are not applicable. This section was amended in 1967 and 1969 but these amendments are not applicable to this case.

a claim for a refund based on a carry-back of a net operating loss for the calendar year 1965 had to be filed by April 15, 1969 to be timely. Plaintiffs' claims were not filed until September 12, 1969 and consequently are barred to the extent they pertain to net operating losses for calendar years 1964 and 1965. Only the plaintiffs' claims for a tax refund which were based on a carryback of a net operating loss for the calendar year 1966 were timely filed by the plaintiffs and thus only these claims will be further considered by the Court.

With respect to their 1966 net operating losses, the plaintiffs no longer assert, as they did in their claims filed with the IRS, that they are entitled to tax refunds based on applying their net operating *losses* to 1963 *tax tables*. Instead, the plaintiffs now, for the first time in briefs filed with this Court, argue that they had taxable incomes in 1963 which can be reduced by the amount of their 1966 net operating losses to effect a reduction of their 1963 tax liabilities.

The plaintiffs' claims utterly fail to advance the grounds now presented to this Court as a basis for their claimed refunds. In fact, although the plaintiffs alleged that income taxes were "paid with" their 1963 returns, the claims contain no allegation that the plaintiffs had taxable income in 1963. Indeed, the plaintiffs in their 1963 tax returns refer to this tax as a "supplemental tax" and both their personal and partnership tax returns for 1963 on their face reflect net losses rather than net income for the year.

Despite this, however, the plaintiffs now advance the following involved argument: (1) that their partnership completed a long term contract in 1963; (2) that the income from this contract was reported on the 1963 *partnership* tax return using the "completed contract" method of accounting;[7] (3) that this return reflected a net loss for the partnership; (4) that one-half of this net loss was reported on each of the plaintiffs' individual 1963 tax returns and this is the reason why the returns reflect a loss in 1963; (5) that in 1963 the partners in fact received income from the partnership; (6) that this income is somehow reflected in a 1963 schedule attached to the plaintiffs' *individual* tax returns in which (allegedly pursuant to a tax calculation procedure set out in 26 U.S.C. § 1301 (1958))[8] adjusted gross income is listed for each year from 1953 through 1962, deductions are taken from each year's adjusted gross income, a tax is calculated for each year, these taxes are reduced by taxes already paid in each year, and the remaining amounts are added together to provide a "supplemental" tax of

---

7. "Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion." Treas.Reg. § 1.451–3(6)(2) (1966). Also see Rabkin & Johnson Federal Income Gift and Estate Taxation, Vol. 2, ¶ 12.08 (1975); and Mertens, Law of Federal Income Taxation, Vol. 2, ¶ 12.134 (1974).

8. This section provides:

"(a) LIMITATION ON TAX—If an individual or partnership—

(1) engages in an employment as defined in subsection (b); and

(2) the employment covers a period of 36 months or more (from the beginning to the completion of such employment); and

(3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment,

then the tax attributable to any part of the compensation which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

$17,361.00 for Edmond and $8,854.60 for John; and (7) that the 1966 net operating losses can be set off against this income to reduce the "supplemental" taxes paid by the plaintiffs for 1963.

■ But even if all of these facts, theories and arguments now advanced by plaintiffs are assumed to be true and in line with applicable law (which defendant does not concede), the plaintiffs' contentions can not prevail in this action because in the absence of a waiver by the government or timely amendments to their claim filed with the IRS, neither of which is present here, the plaintiff-taxpayers are not permitted to advance one ground for refund in their claims to the IRS and thereafter rely upon entirely different factual and legal grounds in a subsequent court suit for such refunds. Rather a taxpayer is confined to the scope of the grounds asserted in his refund claim filed with the IRS and anything not raised in that claim cannot be raised later in a suit for a tax refund. Real Estate Title Co. v. U. S., 309 U.S. 13, 18, 60 S.Ct. 371, 84 L.Ed. 542 (1940); Sid W. Richardson Foundation v. United States, 430 F.2d 710, 714 (C. A.5, 1970) *cert. denied* 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544; Egan v. United States, 325 F.Supp. 1227, 1229, n.3 (D.Del.1971).

The law is stated in Alabama By-Products v. Patterson, 258 F.2d 892, 900 (C.A.5, 1958), *cert. denied* 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959) as follows:

> "All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. . . . Anything not raised at that time cannot be raised later in a suit for refund."

In their claims filed with the IRS pursuant to 26 U.S.C. § 7422(a), the plaintiffs failed to contend or show that they had any 1963 taxable income, they failed to assert that any such 1963 taxable income should be reduced by the amount of their 1966 net operating losses, and they failed to claim that their original 1963 tax liability was calculated according to 26 U.S.C. § 1301 (1958) or that their claims for refund should be calculated according to that section.

Furthermore, even if the IRS in considering the claims had referred to the 1963 partnership and individual tax returns, these failed to give any indication of the factual and legal basis of the grounds for the refunds now asserted in the briefs filed in this court. Accordingly, the plaintiffs are precluded from now asserting in this suit an entirely different factual basis and legal theory based on the contention that they had 1963 taxable income which could be reduced by the amount of their 1966 net operating losses so as to lower their 1963 tax liability as calculated under 26 U.S.C. § 1301 or in any other manner. These facts and theories were clearly never presented to the IRS.

■ The plaintiffs' claims for refund presented to the IRS were based solely on the ground that their alleged net operating losses for 1964, 1965 and 1966 should be applied to the 1963 tax rates and their 1963 tax liability reduced by the amount thereby derived. The fallacy of this contention is so obvious it hardly warrants discussion. It suffices to say that "taxable income" is applied to tax rates to determine an individual's tax liability. Deductions such as net operating losses, 26 U.S.C. § 172 (1962), are not applied to tax rates but are rather subtracted from "gross income" to derive "taxable income." 26 U.S.C. § 63 (1954). Accordingly, the plaintiffs' ground for a refund of their 1963 income taxes fails as a matter of law, the defendant's motion for summary judgment will be granted and the plaintiffs' cross-motion for summary judgment will be denied.