**SCOTT PAPER COMPANY**

v.

**UNITED STATES of America.**

**Civil Action No. 95–4004.**

United States District Court,
E.D. Pennsylvania.

June 25, 1996.

Herbert Odell, Zapruder & Odell, Bala Cynwyd, PA, for Scott Paper Company.

Stuart D. Gibson, U.S. Dept. of Justice—Tax Division, Washington, DC, for United States.

### MEMORANDUM OF DECISION

RUETER, United States Magistrate Judge.

Before this court is plaintiff's motion to compel production of documents. (Docket No. 11).[1] This court granted plaintiff's request for oral argument on the motion and oral argument was heard on April 1, 1996.

1. The motion was referred to this judge for disposition by the Honorable James McGirr Kelly.

For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND

In the underlying litigation, plaintiff seeks to recover a refund in the amount of $735,067, representing interest it claims was erroneously assessed and collected by the Internal Revenue Service ("IRS") for its taxable year ending December 31, 1983. The following facts are undisputed according to the parties' pleadings. Plaintiff timely filed a consolidated federal income tax return on behalf of itself and its affiliated group of companies for its 1983 tax year on September 17, 1984, pursuant to extensions (the "1983 Return"). In its 1983 Return, as originally filed, plaintiff reported an overpayment of federal income taxes for that year in the amount of $7,456,035. Plaintiff indicated on the 1983 Return that the entire amount of the overpayment should be applied to its estimated tax liability for 1984. The 1983 Return was audited by the IRS and a deficiency was found. The IRS and plaintiff reached an agreement regarding the additional amount of 1983 federal income taxes owed by plaintiff. Plaintiff does not challenge its liability for the additional 1983 taxes.

On October 18, 1991, the IRS assessed interest in the amount of $14,693,267.38 with respect to the agreed upon 1983 tax deficiency. Plaintiff claims that this interest amount was excessive and erroneous. Plaintiff argues that the overpayment in the 1983 Return should have been applied to the third quarterly installment of its 1984 taxes, due September 17, 1984, because it had already paid in full the first two installments. Therefore, plaintiff claims that the IRS erred because it began to compute deficiency interest on March 15, 1984, whereas the proper starting date was September 17, 1984. In the alternative, plaintiff claims a refund of interest in the amount of $39,514, representing interest on the $7,456,035 overpayment for the period commencing March 15, 1984 and ending April 16, 1984.[2]

2. In its memorandum, in opposition to plaintiff's motion, the defendant concedes that the plaintiff

Defendant contends that the proper starting date for computing deficiency interest was April 16, 1984, the date on which plaintiff's first quarterly installment for its 1984 federal income taxes was due, in accordance with its contemporaneously published Revenue Ruling and News Release. Defendant admits that the plaintiff elected to apply the overpayment to its estimated tax liability for 1984, but argues that plaintiff did not specify the particular estimated tax installment to which it wished to apply the overpayment. The defendant argues that the IRS correctly applied the overpayment to the April 16, 1984 installment.

The plaintiff filed a Claim for Refund (form 843) seeking a refund of a portion of the interest payment due on the 1983 tax in issue ("Refund Claim"), which the IRS disallowed. Thereafter, plaintiff filed the instant action.

**Plaintiff's Motion to Compel.** On November 16, 1995, plaintiff served defendant with a request for production of documents relating to Revenue Rulings ("RR") 83–112, 84–58, and 88–98. On December 18, 1995, defendant responded to plaintiff's discovery request by (1) objecting to the production on grounds of relevance; and (2) producing several non-privileged documents. On December 28, 1995, defendant produced several additional documents and provided an index of 149 documents, all of which were withheld on the grounds of the "deliberative process privilege." The index was updated on February 1, 1996 (the "Log"). In addition, defendant also asserted the following privileges to some of the documents: (1) attorney client privilege; (2) work product privilege;[3] and (3) the privilege for tax return information provided under section 6103 of the Internal Revenue Code ("IRC").

Plaintiff seeks all requested documents *except* documents withheld by defendant under section 6103 of the IRC. (Plaintiff's Motion to Compel at ¶ 6). Plaintiff also seeks reimbursement of its costs and expenses from defendant.

is entitled to the refund sought in its alternative claim, *i.e.*, that portion of the interest which accrued from March 15 to April 16, 1984 (Brief, p. 2, n. 2).

## II. DISCUSSION

1. *Variance.* Plaintiff claims that the documents it seeks are relevant to its contention that the IRS acted improperly by retroactively applying RR 88–98 to tax years prior to its issuance. The tax year involved in this case is 1983. RR 88–98 was not issued until 1988. At the time it filed the 1983 Return, plaintiff contends that RR 83–112 governed the calculation of deficiency interest and would allow it the relief it seeks. Plaintiff further claims that the IRS' decision to apply RR 88–98 retroactively is subject to review by the courts, which review must be based upon the full administrative record before the agency at the time it made its decision. Because the retroactive application of RR 88–98 is at issue in this case, plaintiff argues, discovery of the full administrative record is necessary and appropriate.

Defendant argues that the doctrine of variance prohibits the plaintiff from challenging in this lawsuit the validity and applicability of RR 88–98 and 26 U.S.C. section 7805(b), relating to the retroactivity of rulings and regulations, because it did not raise this claim in its Refund Claim. Since it did not raise this claim in its Refund Claim, documents relating to RR 88–98 and section 7805(b) are irrelevant. Moreover, the defendant claims that it did not invoke section 7805(b) in issuing RR 88–98 because it announced its intention to issue a companion ruling to RR 84–58 in a March 30, 1984 News Release.

Plaintiff disputes defendant's relevance objections stating that the court should not rule on defendant's variance argument until after discovery is completed and the parties advance their substantive positions. Further, plaintiff argues that there is no variance in this case because the "ground" of its Refund Claim has not changed since it filed the Refund Claim. Plaintiff claims that "[i]t is not unreasonable to assume that the IRS knows the tax law and can do its own research. Thus, a claim for refund is not a

3. Defendant has abandoned its claim of work product privilege.

legal brief, which generally will discuss, distinguish, or challenge relevant authority." (Plaintiff's Memorandum at 5) (footnote omitted).

■ The filing of a timely refund claim is a prerequisite to the maintenance of an action to recover taxes alleged to have been improperly assessed or collected. *See* IRC § 7422(a). *See also Hempt Bros., Inc. v. United States,* 354 F.Supp. 1172, 1182 (M.D.Pa.1973), *aff'd,* 490 F.2d 1172 (3d Cir.), *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974). The law regarding this requirement has generally been stated as follows:

> [The refund claim] must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. Treas.Reg. § 301.6402–2(b)(1) (1954). A corollary of the enumerated principles is that a court lacks jurisdiction of an action to recover taxes except upon grounds *reasonably encompassed by the claim for refund as originally filed or properly amended;* the purpose of this rule is to facilitate administrative determination of claims and to limit litigation to issues which the Commissioner has considered and prepared to defend.

*Hempt,* 354 F.Supp. at 1182 (footnote omitted) (emphasis added).

In *Hempt,* the plaintiff argued a theory of recovery in its lawsuit, a tax-benefit theory, which it did not raise in its refund claim. The plaintiff argued that this was irrelevant "since the Commissioner is alleged to have been apprised of all the operative facts upon which the new theory depends and since, in any event, the refund claim is not intended to be a legal brief in which the taxpayer is required to elaborate all theories upon which the claim is based." *Id.* at 1182–83. The court rejected this argument stating as follows:

> To the contrary, the Commissioner is required to examine only those points to which his attention is necessarily directed, and this is especially apposite here because the corporation's amended claim sets forth specific reasons in support of its inventory argument the natural effect of which is to

induce the Commissioner to pursue quite a different line of inquiry than is relevant to the theory upon which plaintiff presently seeks to rely.... Similarly, it is immaterial that facts which might support recovery pursuant to the tax-benefit theory were before the Commissioner when he reviewed the corporation's claim; the mere availability of information is not equivalent to notice that a specific claim based thereon is being made because the Internal Revenue Service cannot be expected to discover every claim which a taxpayer might conceivably assert.

*Id.* at 1183 (footnote omitted) (citations omitted). *See also Pfotzer v. United States,* 396 F.Supp. 961, 965 (D.Del.1975) ("[A] taxpayer is confined to the scope of the grounds asserted in his refund claim filed with the IRS and anything not raised in that claim cannot be raised later in a suit for a tax refund"), *aff'd,* 527 F.2d 645 (3d Cir.1976).

In *Schuylkill Haven Trust Company v. United States,* 252 F.Supp. 557, 561 (E.D.Pa. 1966), the court stated that the requirement that a refund claim be filed prior to commencement of a lawsuit "is designed to apprise the Commissioner of what subject matter to review and he can take the claim at face value and examine only those grounds to which his attention has been directed." Notwithstanding this general principle, the taxpayer in that case argued that the government was "otherwise informed" of the existence of the new ground for recovery and, therefore, was not "unfairly surprised or prejudiced by it". *Id.* at 562. In support of this theory, the taxpayer relied upon *Westchester Fire Ins. Co. v. United States,* 138 F.Supp. 788, 790 (S.D.N.Y.1955), in which the court stated: "The practical test is whether the refund claim was sufficiently broad to have led the Commissioner in his investigation of the merits of the claim to a consideration of the facts now attempted to be pleaded". Applying this test to the facts in that case, the court concluded that the Commissioner could not have been led by the contentions in the refund claim to consider the facts surrounding the taxpayer's newly asserted ground for recovery. *Schuylkill Haven,* 252 F.Supp. at 561.

· The courts in this circuit have not explicitly adopted the "practical test" enunciated in *Westchester Fire.* As stated above, the court in *Schuylkill Haven* held that the Commissioner "can take the claim at face value and examine only those grounds to which his attention has been directed." In *Fidelity–Philadelphia Trust Company v. United States,* 222 F.2d 379, 382 (3d Cir.1955), the taxpayer attempted to set forth a new ground for recovery in its appeal. It contended that the Commissioner was apprised of the new claim, which involved allowing a disallowed deduction for executor's commissions as a deduction for charitable uses, because its refund claim contained a claim for an increased charitable deduction. *Id.* Our court of appeals rejected this argument stating that the taxpayer's refund claim, "would not enable the Commissioner ... to make an intelligent administrative review of the claim." *Id.*

 The court cannot consider an action unless its grounds were "reasonably encompassed by the claim for refund." *Hempt,* 354 F.Supp. at 1182. In this circuit, if the refund claim sufficiently presents the facts and legal claim so as to "enable the Commissioner ... to make an intelligent administrative review of the ·claim", *Fidelity–Philadelphia Trust Company,* 222 F.2d at 382, then the claim has been raised in the refund claim and will not be barred in the subsequent lawsuit.[4] The court will apply this standard in reviewing the scope of plaintiff's Refund Claim.

 Plaintiff's Refund Claim dated August 25, 1993 is attached to its complaint at Exhibit 1. In relevant part, the plaintiff asserted the following ground in its Refund Claim:

Under Rev.Ruling 88–98, [1988–2 C.B. 356], and *Avon Products[, Inc. v. United States,* 588 F.2d 342 (2d Cir.1978) ], no

deficiency interest accrues on the sum of $7,456,035 until September 17, 1984, the effective date of the credit of the overpayment of 1983 estimated tax against the 1984 estimated tax. The Internal Revenue Service failed to give the Taxpayer credit for this overpayment and improperly charged the Taxpayer interest on that portion of the deficiency from March 15, 1984 instead of September 17, 1984. Since the Internal Revenue Service failed to properly account for the $7,456,035 overpayment in computing the interest on the 1983 deficiency, Taxpayer believes that the calculation of the interest by the Internal Revenue Service was incorrect.

Complaint, Exhibit 1 at Attachment B. The IRS denied plaintiff's request for a refund by letter dated October 21, 1993 for the following stated reason:

The overpayment shown on a return should be applied against the first installment of estimated tax for the succeeding year, unless the taxpayer notifies the Service when the return is filed. Since there was no designation when the 1983 Corporate Income Tax Return was filed, the interest calculated is correct as charged.

Complaint, Exhibit 2.

In its memorandum in support of the motion, plaintiff further explains the basis of its claims in the complaint that it is entitled to a refund. Plaintiff claims that it is entitled to a refund on two theories; first, application of *Avon Products*[5]; and second, pursuant to RR 83–112. In particular, plaintiff claims in *this* litigation that the IRS acted improperly in seeking to apply RR 88–98 retroactively to taxable years prior to its issuance in 1988. Plaintiff maintains that at the time it filed the 1983 Return, RR 83–112 governed calcu-

---

**4.** A taxpayer will not be precluded from pressing an argument not raised in his refund claim if the government has waived the variance doctrine. *See Real Estate–Land Title & Trust Co. v. United States,* 309 U.S. 13, 18, 60 S.Ct. 371, 373, 84 L.Ed. 542 (1940); *Bank of New York v. United States,* 526 F.2d 1012, 1019 (3d Cir.1975). Generally, waiver is found where the agency has already investigated the merits of the newly raised claim. *See, e.g., Angelus Milling Co. v. Commissioner, I.R.S.,* 325 U.S. 293, 297, 65 S.Ct. 1162, 1164–65, 89 L.Ed. 1619 (1945).

**5.** The court in *Avon* interpreted IRC § 6601(a) broadly and found that it provided that interest shall begin running when a tax becomes both due and payable. In that case, Avon's 1967 taxes became due on June 15, 1968, and they were paid in full from that date until a deficiency was created on September 15, 1968, when an excess credit was claimed. The court concluded that interest should run from the later date. 588 F.2d at 344.

lation of interest on deficiencies and entitled it to the refund it claims.

In the Refund Claim, plaintiff argued that it was entitled to a refund based upon *Avon Products* and RR 88–98. In fact, plaintiff maintained that the IRS erred by failing to properly apply RR 88–98. *See* Complaint, Exhibit 1 at Attachment B. Nowhere in the Refund Claim did plaintiff argue that the IRS should not have applied RR 88–98, nor did plaintiff assert that it was entitled to a refund based upon RR 83–112 and 84–58. In responding to plaintiff's Refund Claim, the IRS is required to "examine only those points to which his attention is necessarily directed." *Hempt*, 354 F.Supp. at 1183. Here, based on the contentions in the Refund Claim, the IRS would have considered RR 88–98 and *Avon Products*. Nothing in the Refund Claim would have directed the IRS to consider the earlier revenue rulings, i.e., nothing in the Refund Claim would "enable the Commissioner ... to make an intelligent administrative review of the claim" plaintiff now asserts regarding RR 83–112 and 84–58. The grounds now asserted by plaintiff relating to these two earlier revenue rulings were not "reasonably encompassed by the claim for refund." *Hempt*, 354 F.Supp. at 1182. The variance doctrine prevents the court from considering plaintiff's claims regarding these rulings. Consequently, plaintiff's request for documents relating to RR 83–112 and 84–58 must be denied as irrelevant.

■ Plaintiff also requested discovery of documents regarding RR 88–98 and 26 U.S.C. section 7805(b), relating to the retroactivity of rulings and regulations. Defendant argues that it did not "affirmatively rely upon § 7805(b) in issuing Rev.Rul. 88–98." (Defendant's Surreply in Opposition to the Motion at 2). Therefore, defendant contends that plaintiff has no need to discover documents discussing this statute. Defendant further argues that plaintiff may not chal-

lenge the "wisdom or applicability" of section 7805(b) because it did not raise such challenge in its Refund Claim.

Plaintiff argues that defendant waived its ability to argue that variance bars its discovery with respect to section 7805(b) because a Senior Technician Reviewer, an individual identified by defendant as an "attorney", responded to plaintiff's request for technical assistance on the application of RR 88–98 by quoting section 7805(b) and stating that "[b]ecause neither Rev.Rul 88–98 or Rev.Rul. 83–112 were limited to prospective application, Rev.Rul. 88–98 applies retroactively to years prior to its publication." *See* Internal Revenue Memorandum at 2, 4.

■ Section 7805(b) provides that the IRS may prescribe the extent, if any, to which any ruling or regulation relating to internal revenue laws shall be applied without retroactive effect. Stated differently, unless otherwise specifically limited, all internal revenue laws have retroactive effect. In essence, by not limiting their retroactive effect, the IRS makes a decision that laws shall be applied retroactively. Defendant clearly relied upon section 7805(b) when it did not limit the retroactive application of RR 88–98. Moreover, plaintiff stated in its Refund Claim that it based its claim for a refund on RR 88–98. The only way in which RR 88–98 could have applied to the 1983 Return and the calculation of plaintiff's deficiency interest, is if it were applied retroactively. In consideration of the facts set forth in the Refund Claim and plaintiff's reference to RR 88–98, defendant was sufficiently put on notice that the applicability of RR 88–98 and, thus, section 7805(b), was at issue. There is no variance with respect to RR 88–98 and section 7805(b), and, consequently, plaintiff's request for production of documents relating to RR 88–98 and section 7805(b) is granted, to the extent not otherwise limited by this court's decisions herein.[6]

---

**6.** Defendant claims that RR 88–98 was not applied retroactively because the IRS announced in a March 30, 1984 News Release its intention to issue a companion ruling to RR 84–58. Defendant argues that plaintiff should have been aware of the substance of RR 88–98 when it filed the 1983 Return after publication of the News Release, and, thus, § 7805(b) played no role in the issuance of RR 88–98. A review of the News Release, however, does not disclose such an announcement by the IRS to issue a companion ruling to RR 84–58. Even if it did, the IRS offers no support for its argument that because the IRS intended to issue an undisclosed ruling at some time in the future, that new ruling was immediately applicable.

2. *Executive or Deliberative Process Privilege.* Defendant contends that this privilege protects all of the documents listed in the Log. Plaintiff argues that the defendant failed to properly invoke the deliberative process privilege.

■ "The deliberative process privilege permits the government to withhold documents containing 'confidential deliberation of law or policy-making, reflecting opinions, recommendations or advice.'" *Redland Soccer Club v. Dept. of Army,* 55 F.3d 827, 853 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996) (quoting *In re Grand Jury,* 821 F.2d 946, 959 (3d Cir.1987), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988)). This privilege, also known as the executive or governmental privilege, "serves to avoid the evils of 'government in a fishbowl.'" *Jupiter Painting Contracting Co. v. United States,* 87 F.R.D. 593, 597 (E.D.Pa.1980) (quoting *Gulf Oil Corp. v. Schlesinger,* 465 F.Supp. 913 (E.D.Pa.1979)). This privilege recognizes "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Id.* (citing *First Eastern Corp. v. Mainwaring,* 21 F.3d 465, 468 (D.C.Cir. 1994)). *See also In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 580–81 (E.D.N.Y.1979) (same).[7]

■ The privilege is a qualified privilege. After the government makes a sufficient showing of entitlement to the privilege, the court should balance the competing interests of the parties. *Redland Soccer Club,* 55 F.3d at 854. Thus, a claim of executive privilege requires a two-step review by the court. First, the court must decide whether the communications are in fact privileged. The government has the burden of showing privilege at this first step. *Id.* Second, the court must balance the parties' interests. At this second step, the party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interests. *Id.*

■ "Strong competing interests must be weighed against the government's interest in nondisclosure. Foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding." *Franklin National Bank,* 478 F.Supp. at 582. Other factors to consider are: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Redland Soccer Club,* 55 F.3d at 854.

■ The executive privilege is limited in two important ways. First, the document must be deliberative. The privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process. *Jupiter Painting,* 87 F.R.D. at 597–98 (citing *EPA v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973)). Second, the document must be predecisional. The second limitation depends upon the timing of the communication. As explained by the Supreme Court in *NLRB v. Sears, Roebuck and Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), this limitation is necessary to prevent the government's legitimate need for confidentiality from giving rise to a vast body of secret law.

■ Generally, the executive privilege must be invoked by the department head of the agency at issue. The appropriate manner in which the privilege should be invoked was set forth in *United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953), where the Court said:

7. A subsidiary and related theory supporting the privilege is that the judiciary is not authorized to probe the mental processes of an executive or administrative officer. *Franklin National Bank,* 478 F.Supp. at 580–81 (citations omitted). "This principle forbids judicial investigation into 'the methods by which a decision is reached, the matters considered, (and) the contributing influences or the role played by the work of others.'" *Id.* (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 326 (D.D.C.1966), *aff'd,* 384 F.2d 979 (D.C.), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967)).

There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for a claim of privilege ...

Although the Court in that case was dealing with the claim of privilege for state and military secrets, "its prerequisites for formal invocation of the privilege have been uniformly applied irrespective of the particular kind of executive claim advanced." *Carter v. Carlson,* 56 F.R.D. 9, 10 (D.D.C.1972). *See also United States v. O'Neill,* 619 F.2d 222, 226 (3d Cir.1980) (where the Third Circuit Court of Appeals quoted *Reynolds* and *Carter*).

In *O'Neill,* an attorney for the City of Philadelphia invoked the executive privilege for the City. Our court of appeals concluded that the privilege was not properly invoked on several grounds including that "it was not invoked by the department head, but by the attorney for the City. There was no affidavit, and no indication that the privilege was being invoked by the responsible public official on the representation that he had personally examined the documents and determined nondisclosure was required." *O'Neill,* 619 F.2d at 225. As stated earlier, the court in *O'Neill* identified at least three requirements that must be satisfied to support a claim of executive privilege: (1) the head of the agency claiming the privilege must personally review the material; (2) there must be a specific designation and description of the documents claimed to be privileged; and (3) there must be precise and certain reasons for preserving the confidentiality of the communications. *O'Neill,* 619 F.2d at 226.

With respect to the first requirement, it appears that when courts refer to the "head of the agency claiming the privilege", they are referring to the top official. For example, if the White House is claiming the privilege, the President, as the head of the "agency", i.e, the White House, must make the formal claim. *Center on Corporate Responsibility v. Shultz,* 368 F.Supp. 863, 873 (D.D.C.1973). In *Pierson v. United States,* 428 F.Supp. 384, 393 (D.Del.1977), the defen-

dant agency, the IRS, argued that the executive privilege does not require a formal affidavit from the Commissioner because the privilege is not constitutionally based nor was it being asserted to protect "state secrets". The court rejected this argument and concluded that the privilege had not been properly invoked stating that it "can find no authority to support the defendant's position that executive privilege, constitutional or not, can be asserted by someone other than the responsible agency head, in this case, the Commissioner [of the Internal Revenue Service]." *But see Jupiter Painting,* 87 F.R.D. at 599–600 (court determined that documents need not be produced under the governmental or executive privilege; it appears that the privilege was asserted by counsel, not Commissioner of IRS.)

With respect to the second and third elements, our court of appeals has stated that the "indiscriminate claim of privilege may in itself be sufficient reason to deny it." *O'Neill,* 619 F.2d at 227. Even when the privilege has been asserted by the President of the United States, the Supreme Court has rejected it when it depended "solely on the broad, undifferentiated claim of public interest in the confidentiality of ... conversations." *United States v. Nixon,* 418 U.S. 683, 706, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974).

Plaintiff claims that this privilege may be asserted only by the head of the agency involved which, plaintiff argues, did not occur in this case. Moreover, plaintiff argues that the executive privilege is a qualified privilege, which must be weighed against plaintiff's need for the documents.

Defendant submitted the Log listing each document withheld on the ground of executive privilege. Defendant claims that each withheld document expresses the thoughts, analyses, and opinions of its author and that each document was created before the promulgation of the revenue ruling to which it relates. Defendant claims that release of the requested documents "would likely cause a significant impediment or nullification of agency actions."

The Commissioner of the IRS did not invoke the executive privilege in this case. Rather, Sara Coe, Chief, Procedural Branch, Field Service Division, Office of Chief Counsel, IRS, invoked the privilege. Defendant claims that this is an acceptable "middle ground" and identifies Ms. Coe as a "high-level supervisor". (Defendant's Memorandum at 14 n. 9). Defendant also points to a Chief Counsel Directive—"CCDM (35)5(13)6.1"—which states that the executive privilege must be asserted by the "agency head or the Chief, Procedural Branch, rather than the docket attorney."

Based on the foregoing, this court concludes that the defendant has not properly invoked the executive privilege because it was not claimed by the head of the defendant agency, i.e., the Commissioner of the IRS. The executive privilege, therefore, does not protect the documents listed in the Log from discovery.

As an alternative response to plaintiff's argument, defendant requested that it be granted additional time to "permit a higher-ranking IRS official to review the documents and assert the privilege." (Defendant's Memorandum at 14 n. 9). Defendant shall have seven (7) days from the date of the order accompanying this Memorandum Opinion to assert the executive privilege in accordance with this Memorandum Opinion. In the event that defendant elects to invoke this privilege, it shall simultaneously submit to this court copies of all documents which it claims are protected by the deliberative process privilege for in camera inspection so that this court may balance defendant's claim of privilege against plaintiff's need for the documents.[8]

3. *Attorney–Client Privilege.* Defendant claims that the documents marked with an asterisk in the Log are protected by the attorney-client privilege as well as the executive privilege. Defendant asserts that these particular documents "involve instances where the author has either sought or provided legal advice or analysis." (Defendant's Memorandum at 11–12). Defendant claims that it has met its burden of establishing that these documents are subject to the attorney-client privilege and that the plaintiff has failed to prove its entitlement to them.

■■■■ In order to establish that communications are protected by the attorney client privilege, the following elements must be present: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 862 (3d Cir.1994). *See also Glenmede Trust Company v. Thompson,* 56 F.3d 476, 486 n. 15 (3d Cir.1995) (same).[9] The purpose of the attorney-client privilege is "to encourage full

---

**8.** Several courts have held that given the strong competing interests to be balanced, this privilege usually requires examination of the documents in camera. *See Redland Soccer Club,* 55 F.3d at 855 ("in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege") (citation omitted). *See also O'Neill,* 619 F.2d at 231 ("The court must give ... consideration to an appropriate method by which that which is legitimately privileged, such as ... intragovernmental policy discussions, may be shielded while the relevant factual data is disclosed. In this connection, the court may want to use the in camera examination device"); *Franklin National Bank,* 478 F.Supp. at 582 ("Given this clash of strong competing

interests, the official information privileged usually requires examination of the documents in camera") (citations omitted).

**9.** *See also* 42 Pa.Con.Stat.Ann. § 5928 (Purdon 1982 & Supp.1995) which states as follows:

§ 5928. Confidential communications to attorney

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

and frank communication between attorneys and their clients and thereby promote broader public interests in observance of the law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). *See also Westinghouse Electric Corporation v. The Republic of Philippines,* 951 F.2d 1414, 1423 (3d Cir.1991) (quoting same); *In re Sunrise Securities Litigation,* 130 F.R.D. 560, 570 (E.D.Pa.1989) (same). The privilege extends to verbal statements, documents and tangible objects conveyed to an attorney in confidence for the purpose of any legal advice. Only the communication between the attorney and the client itself is privileged; the underlying facts as well as the factual circumstances surrounding the attorney-client relationship are not privileged. *Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682.

 "Because the attorney client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse,* 951 F.2d at 1423. *See also In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir. 1979) (same). Notwithstanding this apparent limitation, it generally is acknowledged that the attorney-client privilege is "so compellingly important" that the courts must, within their limits, "guard it jealously". *Haines v. Liggett Group Inc.,* 975 F.2d 81, 90 (3d Cir. 1992). *See also Rhone–Poulenc,* 32 F.3d at 862 ("As the [attorney client] privilege serves the interests of justice, it is worthy of maximum legal protection"). "When the record is ambiguous as to the elements necessary to establish a claim of attorney-client privilege, the burden is on the party asserting it ... [to] show, by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of the privilege." *Sunrise Securities,* 130 F.R.D. at 570 (quoting *Delco Wire & Cable, Inc. v. Weinberger,* 109 F.R.D. 680, 687–88 (E.D.Pa.1986)).

 Defendant asserts that the documents listed in the Log and marked with an asterisk are protected by the attorney-client privilege. Defendant bears the burden of proving that the attorney-client privilege applies to those documents. Plaintiff argues that the IRS failed to show that all docu-

ments to which it asserts the attorney-client privilege were maintained in a way that preserves the privilege. Specifically, plaintiff contends that it is "highly unlikely that the IRS maintained its administrative files in a way that preserved the attorney client privilege." (Plaintiff's Memorandum at 19). Rather, the plaintiff hypothesizes that the withheld documents were held in the IRS' administrative files which are available routinely to persons in the IRS.

 In claims of attorney-client privilege by an organization, such as a governmental agency or a corporation, the privilege extends to those communications between the attorney and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication. *Mead Data Central, Inc. v. U.S. Dep't. of the Air Force,* 566 F.2d 242, 253 n. 24 (D.C.Cir.1977) (addressing a claim of attorney client privilege under the Freedom of Information Act ("FOIA")). In *Coastal States Gas Corp. v. Dep't. of Energy,* 617 F.2d 854 (D.C.Cir. 1980), the court denied the Department of Energy's claim of attorney-client privilege under the FOIA and concluded that it "failed to demonstrate a fundamental prerequisite to assertion of the privilege: confidentiality both at the time of the communication and maintained since." 617 F.2d at 863. The court further held that the "burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Id.* The court found that the Department of Energy, which admitted that it did not know who had access to the memoranda, failed to affirmatively establish confidentiality and show the attempts taken to protect the confidentiality of the memoranda at issue within the agency. *See also Commonwealth of Pennsylvania, Dept. of Public Welfare v. United States Dept. of Health and Human Services,* 623 F.Supp. 301, 305 (M.D.Pa.1985) (quoting *Coastal States Gas* and *Mead Data* ).

This court finds that defendant failed to establish that the documents it claims are protected by the attorney-client privilege

were maintained by the IRS in a confidential manner. In her Declaration, Sara Coe does not state the manner in which the documents were held by defendant. It is unclear whether they were maintained in files subject to open review by all members of the IRS or whether they were maintained with an expectation of confidentiality. Consequently, defendant's claim of attorney client privilege must fail.[10]

## III. CONCLUSION

For all of the foregoing reasons, the court makes the following decisions. Plaintiff is not entitled to the documents listed in the Log under the headings of RR 83–112 and 84–58 because the doctrine of variance precludes the court from considering claims relating to those revenue rulings since plaintiff did not raise those claims in his Refund Claim. Documents relating to RR 83–112 and 84–58, therefore, are irrelevant to plaintiff's claims in this action.

Defendant failed to properly invoke the executive or deliberative process privilege with respect to the documents listed in the Log. Consequently, that privilege does not protect documents relating to RR 88–98 and section 7805(b) from discovery.

Plaintiff failed to properly invoke the attorney-client privilege by not establishing that the documents were maintained in a way that maintained their confidentiality. Consequently, this privilege does not protect the documents relating to RR 88–98 and section 7805(b) from production.

This court has found that neither the deliberative process privilege nor the attorney-client privilege protects the documents listed

in the Log relating to RR 88–98 and section 7805(b) from production. However, because defendant listed all of these documents as also protected by the deliberative process privilege, defendant need not produce any of the documents immediately. Rather, defendant shall have seven (7) days from the date of the Order accompanying this Memorandum Opinion to invoke the deliberative process privilege with respect to documents listed in the Log relating to RR 88–98 and section 7805(b) in accordance with this Memorandum Opinion. In the event that defendant elects to invoke this privilege, it shall simultaneously submit to this court copies of all documents which it claims are protected by the executive or deliberative process privilege for in camera inspection so that this court may balance defendant's claim of privilege against plaintiff's need for the documents.

An appropriate Order follows.

## ORDER

AND NOW, this 25th day of June, 1996, upon consideration of plaintiff's motion for production of documents, and all pleadings submitted relating thereto, and after oral argument on April 1, 1996, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

## ORDERED

1. The motion is **GRANTED IN PART** and **DENIED IN PART.**

2. The motion is **DENIED** to the extent that it requests documents relating to Revenue Rulings 83–112 and 84–58.

---

**10.** Also, a review of the Log reveals that many of the documents marked by defendant as protected by the attorney-client privilege, do not involve a communication with an attorney. Many of the descriptions of these documents in the Log contain references to various named individuals. These individuals are not identified by title and, therefore, this court cannot discern whether the documents contain communications to or from attorneys. If any of these individuals are attorneys providing legal advice, defendant failed to so state in the Log and, therefore, failed to meet its burden of establishing the applicability of the attorney-client privilege. The following documents listed in the Log under the heading of RR

88–98 fall into this category: 2, 3, 4, 5, 6, 7, 8, 9, 11, 15, 16, 17, 18, 19, 22, 23, 24, 26, 31, 34, 35, 39, 40, 43, 45, 46, 47, 48, 53, 60, 61, 66, 68, 69, 70, 72, 73, 75, 77, 78, 79, 83, 84, 86, 94, 96, 97, 99, 100, 104, and 105.

If this court had not already concluded that plaintiff was not entitled to the documents listed in the Logs under the headings RR 83–112 and 84–58, this court would have concluded that the following documents in those categories are not protected by the attorney client privilege because they do not involve a communication with an attorney: (1) RR 83–112, document numbers: 3, 4, 5, 8, 10, 11, 13, 14, 15, 17, and 18; and (2) RR 84–58, document numbers: 7, 8, 12, and 27.

3. Defendant failed to properly invoke the executive or deliberative process privilege with respect to the documents listed in the Log. Consequently, that privilege does not protect the documents from discovery.

4. Plaintiff failed to properly invoke the attorney-client privilege with respect to the documents listed in the Log and marked with an asterisk. Consequently, this privilege does not protect the documents listed in the Log relating to RR 88–98 and section 7805(b) from production.

5. Defendant shall have seven (7) days from the date of this Order to invoke the executive or deliberative process privilege with respect to documents listed in the Log relating to RR 88–98 and section 7805(b) in accordance with this court's accompanying Memorandum Opinion. In the event that defendant elects to invoke this privilege, it shall simultaneously submit to this court copies of all documents which it claims the executive or deliberative process privilege protects for in camera inspection so that this court may balance defendant's claim of privilege against plaintiff's need for the documents.